**William L. BOSECKER and, Diane Bosecker, Individually, Appellants (Plaintiffs Below),**

v.

**WESTFIELD INSURANCE COMPANY and Sam T. Heston & Sons, Inc., d/b/a Heston Insurance Agency, Appellees (Defendants Below).**

No. 82S04–9902–CV–148.

Supreme Court of Indiana.

Feb. 23, 2000.

Donald R. Wright, Evansville, Indiana, Attorney for Appellants.

Jeffrey W. Henning, James D. Johnson, Jennifer L. Johnson, Evansville, Indiana, Attorneys for Appellees.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case turns on whether the builder's risk policy involved here, acquired for the specific purpose of repair and renovation of an existing building, covers the building before any work has started. We hold that the language in this policy is ambiguous and therefore must be construed in favor of the insured to provide coverage starting from its effective date.

In the mid–1980s, William and Diane Bosecker purchased a piece of real estate in Evansville containing a four-unit apartment building and another small structure. In June of 1995, they sold the property to Jason Bartley under a conditional sales contract, but on February 22, 1996, Bartley returned the property to the Boseckers after he was unable to make the payments.

Diane immediately contacted her insurance agency, Heston Insurance Agency, told Diane Terrell, an agent for Heston, that the property was vacant and had water problems, and inquired about obtaining insurance on the property.[1] Terrell first agreed to bind the property under what was variously described as a "standard apartment house" or "landlord's" policy

---

1. At that time the Boseckers had both a builder's risk insurance policy and an apartment policy on other properties, which were provided by Westfield through Heston.

from Westfield Insurance Company, the Boseckers' insurer at the time, but then concluded that she would need additional information. William called Terrell the next day, February 23, and gave her the size and age of the buildings and reported that he had received notices from the City of Evansville Code Enforcement Division requiring that the buildings be vacated and repairs made under threat of razing the buildings. Based on this information, Terrell and the president of Heston decided that the property would not be eligible for the standard apartment building policy, and instead added it as an endorsement to an existing builder's risk policy from Westfield that insured other properties of the Boseckers.

The policy contained two apparently inconsistent provisions defining the covered risks. Section A(1)(a) defined "Covered Property" as "[b]uildings or structures including foundations while in the course of construction, installation, reconstruction, or repair." Section A(2)(b) of the policy described "Property Not Covered" as "[e]xisting buildings or structures to which improvements, alterations, repairs, or additions are being made." On the face of these two provisions, a structure is both covered and not covered if it is under repair.

Approximately ten hours after the property was added to the policy, at 2:00 a.m. on the morning of February 24, the apartment building was destroyed by fire. In its response to the Boseckers' claim for the fire loss, Westfield denied coverage based on the "Property Not Covered" definition, apparently on the assumption that "improvements, alterations, repairs, or additions" were being made.

The Boseckers filed suit against Westfield on July 23, 1996, and amended their complaint nine months later, on April 25, 1997, to include a claim against Heston. Heston then cross-claimed against Westfield and all parties filed motions for summary judgment. Westfield based its motion on the fact that the property was not "Covered Property" because the Boseckers had not yet started the anticipated repairs. The trial court granted Westfield's motion for summary judgment and the Boseckers appealed. The Court of Appeals affirmed the trial court's grant of summary judgment in favor of Westfield, holding that although the policy was ambiguous in the respect already noted, the loss was not covered because the Boseckers had taken no action to start the repairs and the property was therefore not "in the course of reconstruction or repair." *Bosecker v. Westfield Ins. Co.*, 699 N.E.2d 769, 773 (Ind.Ct.App.1998). Judge Bailey dissented. *See id.* at 774–75.

■ The parties' arguments turn on the construction of the policy language, and there is no factual dispute. Accordingly, this is a proper case for summary judgment and our standard of review is de novo.

The Boseckers claim that the trial court erred in granting summary judgment for Westfield because the insurance policy is ambiguous and should be construed broadly to include the property as "Covered Property." They base their claim on specific language in the policy that included the property on the declarations page and the "in the course of repair" language which they contend covered the property at the time of the fire because repairs were imminent. Westfield responds that the trial court's grant of summary judgment was proper because the policy required "Covered Property" to actually be under repair or reconstruction, not merely designated for that purpose.

■ Contracts of insurance are governed by the same rules of construction as other contracts. *See Eli Lilly & Co. v. Home Ins. Co.*, 482 N.E.2d 467, 470 (Ind. 1985). The proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *See Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664, 667 (Ind.1997); *Tate v. Secura*

*Ins.,* 587 N.E.2d 665, 668 (Ind.1992). An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *See Eli Lilly,* 482 N.E.2d at 470; *see also Colonial Penn,* 690 N.E.2d at 667. It is well settled that "[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer" and the policy language is viewed from the standpoint of the insured. *American States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996); *accord Erie Ins. Co. v. George,* 681 N.E.2d 183, 191 (Ind.1997); *Tate,* 587 N.E.2d at 668.

■ Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage. *Tate,* 587 N.E.2d at 668. This is particularly true where, as in this case, the policy is not the product of an equal bargaining relationship and the language has been chosen by the insurer.

> Insurance policies are prepared in advance by insurance and legal experts, having in view primarily the safeguarding of the interests of the insurer against every possible contingency. The insurer not only fully knows the contents of the writing, but also adequately comprehends its legal effect. The insured has no voice in fixing or framing the terms of [the] policy, but must accept it as prepared and tendered, usually without any knowledge of its contents, and often without ability to comprehend the legal significance of its provisions.

*Glens Falls Ins. Co. v. Michael,* 167 Ind. 659, 677, 74 N.E. 964, 969 (1905).

■ Westfield notes the policy's use of the term "existing" to modify only buildings that are "Property Not Covered." It contends that "Property Not Covered" is defined to be buildings other than new construction. Under this view, the policy covers new construction in progress and, to the extent a previously existing building is under the policy, only the "improvements and additions" are covered, not the pre-existing building. This, however,

seems contradicted by references in "Covered Property" to "reconstruction" and "repair" as well as "construction." In sum, we agree with the Court of Appeals that the policy is quite unclear in its delineation between property covered and not covered.

■ The issue then becomes whether the building was "in the course of" reconstruction or repair at the time of the fire. The policy states its effective dates to be April 27, 1995 to April 27, 1996. The house and apartment building are listed as added covered property on a Commercial Inland Marine Coverage Part Endorsement. Under the Commercial Inland Marine Conditions, Provision D concerning the policy period specifically states that "[w]e [Westfield] cover 'loss' commencing during the policy period shown in the Declarations." Still yet another section states that coverage for the apartment building and house begins on February 22, 1996 at 4:00 p.m. Finally, the policy has a section entitled "When Insurance Begins and Ends." That section states that "[w]e [Westfield] cover from the time the Covered Property is at your risk starting on or after the date this coverage begins . . . ." In sum, it is reasonably clear that some risks of repair to these properties were covered as of February 22, but it is unclear whether repair needed to be underway before coverage attached.

■ The majority in the Court of Appeals held that the "Covered Property" provision was a condition precedent to Westfield's obligation to insure the building and that until the repair work was started, the insurance was not effective because the building was not "in the course of" reconstruction. We agree with Judge Bailey that the policy was sufficiently ambiguous on this point that it must be construed to provide coverage. "A builder's risk policy ordinarily indemnifies a builder or contractor against the loss of, or damage to, a building he or she is in the process of constructing." 1 Lee R. Russ &

Thomas F. Segalla, *Couch on Insurance 3d* § 1:53 (1997). These contracts for insurance may be for a fixed period of time or for a specified project. 9 *id.* § 132.20. The policy here specifically added "reconstruction" and "repair" to "constructing." According to the undisputed facts, the President of Heston, Boseckers' agent, believed the property was in the process of "reconstruction" when it was reacquired with the specific purpose of accomplishing the repairs needed to bring it into compliance with the building code. He apparently reached this conclusion by reference to a general understanding of builder's risk policies and also a reading of the specific language of Westfield's policy. We cannot say that the conclusion he reached was an unreasonable interpretation of the policy that was issued. Accordingly, the policy is construed to afford coverage under the principles already discussed.

We also believe this result makes sense from a practical viewpoint. If the builder's risk insurance were not effective until the repairs started, then the Boseckers and anyone else acquiring a building for purposes of rehabilitation would have to obtain two separate insurance policies, one to cover the two days before the repairs started, and one to cover the property while it was being repaired. Alternatively, the policy construction Westfield urges would force a concurrent driving of the first nail at the time of closing the acquisition of the property as a symbolic commencement of repairs. Both results seem unnecessarily cumbersome and artificial. Unoccupied buildings that are being held for long periods before repairs are to be initiated may present risks different from those contemplated by the builder's risk policy, but if Westfield intended to differentiate between the two, it needed to set this out in clear terms in the policy. Not having done so here, the risk remained with the insurer.

The judgment of the trial court is reversed and the cause is remanded with instruction to enter partial summary judg-ment on the issue of coverage in favor of the Boseckers and for further proceedings.

SHEPARD, C.J., and DICKSON and SULLIVAN, JJ., concur.

RUCKER, J., not participating.