ZURICH–AMERICAN INSURANCE GROUP, Appellant–Defendant,

v.

Carl R. WYNKOOP, Appellee–Plaintiff.

Miles & Finch, Inc., Appellant–Defendant,

v.

Carl R. Wynkoop, Appellee–Plaintiff.

No. 49A02–0009–CV–00598.

Court of Appeals of Indiana.

April 23, 2001.

Donald M. Snemis, Germaine Winnick Willett, Ice Miller, Indianapolis, IN, Attorneys for Appellant Zurich–American Insurance Group.

Keith A. Kinney, Alan J. Irvin, Hill, Fulwider, McDowell, Funk & Matthews, Indianapolis, IN, Attorneys for Appellant Miles & Finch, Inc.

William W. Hurst, Mitchell, Hurst, Jacobs & Dick, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

This consolidated appeal involves summary judgment rulings between Carl R. Wynkoop and Zurich–American Insurance Group and also Wynkoop and Miles & Finch, Incorporated. Zurich and Miles & Finch appeal the denial of their summary judgment motions. We find that Wynkoop is not covered by the insurance policy written by Zurich. We further find that Miles & Finch did not owe a duty of care to Wynkoop in procuring the insurance policy from Zurich. Therefore, we reverse the denials of summary judgment against both Zurich and Miles & Finch.

### Facts and Procedural History

On June 25, 1996, Carl Wynkoop was on an errand for his employer, Adesa Corporation (Adesa). He was driving his personal vehicle, a dune buggy. Lisa Coonfield crashed her car into the rear of Wynkoop's buggy, damaging his vehicle and injuring Wynkoop. Wynkoop did not own any automobile liability insurance on his dune buggy. He had also allowed the insurance on his other personal vehicle, a truck, to lapse.

Coonfield's insurer offered Wynkoop the limits of her policy and Wynkoop accepted. Wynkoop then filed a claim with Zurich, Adesa's insurer, for underinsured benefits. Wynkoop claimed that he was covered as an employee of Adesa because he was on an errand for his employer. Zurich denied his claim on the basis that the liability coverage in the policy protected only Adesa and that only employees operating Adesa owned vehicles qualify for underinsured coverage. Zurich's policy for Adesa's Indiana office ("Policy") contains overlapping liability coverage for garage operations and automobile coverage provisions.

Adesa purchased the Zurich policy from Miles & Finch. Miles & Finch has had a long-term relationship with Adesa and knew that the employees often used their own vehicles during the course of business. Wynkoop sued Miles & Finch alleging that Miles & Finch neglected its professional duty by failing to procure the policy that Adesa wanted, which was to benefit Adesa's employees.

Both Zurich and Miles & Finch filed summary judgment motions against Wynkoop. The trial court denied both motions. This consolidated interlocutory appeal ensued.[1]

---

1. We hereby deny Zurich Insurance Company's petition for oral argument.

## Discussion and Decision

The party appealing the denial of summary judgment has the burden of persuading this Court that the trial court's ruling was improper. *Small v. Centocor, Inc.* 731 N.E.2d 22, 25–26 (Ind.Ct.App.2000), *reh'g denied.* Upon review of the denial of a motion for summary judgment, we apply the same standard as the trial court. We resolve any doubt as to any fact, or inference to be drawn therefrom, in favor of the non-moving party. *Id.* Summary judgment should be granted only when the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). Therefore, on appeal, we must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *Id.* at 26. We may not search the entire record to support the judgment, but may only consider that evidence which was specifically designated to the trial court. *Id.*

## I. ZURICH INSURANCE

■ Wynkoop filed a claim against Zurich alleging that he is entitled to coverage as an underinsured motorist under the Policy. Zurich filed a motion for summary judgment asserting that there is no genuine issue of material fact regarding its liability coverage of Wynkoop because the Policy provisions lead to only one interpretation: the Policy does not provide underinsured motorist coverage to Wynkoop because he was driving his own personal vehicle and not a vehicle owned by Adesa. The trial court denied Zurich's motion and Zurich filed this interlocutory appeal. Zurich argues that the specific language in the Policy precludes Wynkoop from liability coverage under the Policy while driving his own vehicle. Wynkoop responds that

the trial court's denial of summary judgment was proper because there are various interpretations of the Policy. He asserts that the Policy provides liability coverage for any employee in the scope of his employment, regardless of who owned the vehicle.

■ Contracts of insurance are governed by the same rules of construction as other contracts. *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243–44 (Ind. 2000). The proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *Id.* An ambiguity exists where a provision is susceptible to more than one interpretation and reasonable persons would differ as to its meaning. *Id.* It is well settled that where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured. *Id.* (quoting *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996), *reh'g denied* ). Ambiguities are construed strictly against the insurer to further the general purpose of the insurance contract to provide coverage. *Id.* It is only where a contract is ambiguous and its interpretation requires extrinsic evidence that the fact-finder must determine the facts upon which the contract rests. *Delaplane v. Francis,* 636 N.E.2d 169, 171 (Ind.Ct.App. 1994), *trans. denied.* Summary judgment based upon construction of a contract is a determination, as a matter of law, that the contract is not so ambiguous that one must resort to conflicting extrinsic evidence to ascertain the contract's meaning. *Peterson v. Universal Fire & Cas. Ins.,* 572 N.E.2d 1309, 1311 (1991).

Therefore, we must examine the Policy to determine whether Wynkoop is entitled to liability coverage. Wynkoop concedes

that he is not covered under the uninsured motorist provisions of the Policy written by Zurich because it explicitly covers only Adesa owned automobiles. However, Ind. Code § 27–7–5–2 provides that if an insured qualifies for liability coverage, the insurer must also provide underinsured benefits unless the insured signs a waiver. Here, both parties agree that Adesa, as the named insured, did not sign a waiver. As a result, the issue of whether Wynkoop is entitled to underinsured benefits turns on whether he qualifies for liability coverage under the Policy.

In order for Wynkoop to qualify for liability coverage under the Policy, he must be both an insured and his automobile must be a covered automobile. The Declarations of the Policy show that under the liability coverage section, any automobile is covered. Thus, the sole issue is whether Wynkoop qualifies as an insured under the Policy.

The term "insured" is defined in relevant part by the Policy as "any person or organization qualifying as an insured in the 'Who Is an Insured' provision of the applicable coverage." Record at 66. Thus, we look to the Liability Coverage section of the policy to determine if Wynkoop qualifies under the "Who Is an Insured" provision. We notice that the section is split into two sections; "Garage Operations–Other Than Covered Autos" and "Garage Operations–Covered Autos." Since Zurich and Wynkoop have agreed that Wynkoop falls under the "Covered Auto" provision, we must examine the "Who Is an Insured" provision under this section. This section reads in part:

a. The following are "insureds" for covered "autos":

1. You[2] for any covered "auto."

2. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

(b) Your employee if the covered "auto" is owned by that employee or a member of his or her household.

Record at 55. This language indicates that an insured for a covered automobile can be an employee, unless that employee is driving his or her own vehicle. Thus, Wynkoop would not be considered an "insured" under the definition given in the liability section.

Wynkoop also contends that he has liability coverage under the "Garage Operations" section of the Zurich policy. He points to the definition of "Garage Operations" which states:

Garage operations means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I of this Coverage Form as covered "autos." Garage operations also includes all operations necessary or incidental to the garage business.

Record at 66. The definition refers to Section I that lists eleven different descriptions of covered autos. Included in this list, which is labeled twenty-one through thirty-one, is twenty-nine which sets forth:

NON–OWNED "AUTOS" USED IN YOUR GARAGE BUSINESS. Any "auto" you do not own, lease, hire, rent or borrow used in connection with your garage business described in the Declarations. This includes "autos" owned by your employees or partners or members

2. The words "you" and "your" refer to the named insured listed in the Declarations.

Here, the named insured is Adesa Corporation.

of their households while used in your garage business.

Record at 53. Wynkoop argues that each description in Section I is a covered auto for the garage operations.

However, Wynkoop fails to read the introductory paragraph to both the Declarations and Section I. First, the relevant portion of the introduction on the Declarations page reads: "[entry] of a symbol next to LIABILITY provides coverage for "garage operations."" Record at 26. Second, the introduction to Section I states in pertinent part that "[t]he following numerical symbols describe the "autos" that **may** be covered "autos."" The symbols entered next to a coverage on the Declarations designate the **only** "autos" that are covered "autos." Record at 53 (emphasis added). Clearly then, for number twenty-nine to apply, it must be entered next to a coverage on the Declarations page. We do not find the symbol twenty-nine anywhere in the Declarations. Thus, Wynkoop does not qualify for coverage under the "Garage Operations" section of the Zurich policy.

We find that the Policy's language is clear and unambiguous—Wynkoop is not covered for liability purposes under the terms of the policy. Therefore, we reverse the denial of summary judgment and remand with instructions for the trial court to enter summary judgment in favor of Zurich.

## II. MILES & FINCH

Wynkoop also filed suit against Miles & Finch alleging that Miles & Finch was negligent in procuring the insurance contract for Adesa. Miles & Finch filed a summary judgment motion arguing that it was not negligent in procuring the Adesa Policy. The trial court denied the motion. On appeal, Miles & Finch argues that it did not have actual knowledge that Wynkoop was relying on its services to Adesa

and that it did not assume any duty to procure coverage for Wynkoop. Finally, Miles & Finch contends that the type of coverage that Wynkoop desired was not available in the insurance industry.

■ To prevail on his negligence claim against Miles & Finch, Wynkoop must establish that: (1) Miles & Finch owed a duty to conform its conduct to a standard of care arising from its relationship with Wynkoop; (2) Miles & Finch failed to conform its conduct to that standard of care; and (3) Wynkoop was injured as a proximate result of Miles & Finch's breach. *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind. 1991), *reh'g denied.* The existence of a duty is a question of law for the court to determine. *Benton v. City of Oakland,* 721 N.E.2d 224, 232 (Ind.1999).

■ Whether the law recognizes any obligation on the part of a particular defendant to conform his conduct to a certain standard for the benefit of the plaintiff is also a question of law. *Webb,* 575 N.E.2d at 995 (citing *Miller v. Griesel,* 261 Ind. 604, 611, 308 N.E.2d 701, 706 (1974)). This Court has analyzed the question of what must be considered in order for a court to impose a duty at common law. Three factors must be balanced: (1) the relationship between the parties, (2) the reasonable foreseeability of harm to the person injured, and (3) public policy concerns. *Ousley v. Bd. of Comm.,* 734 N.E.2d 290, 293 (Ind.Ct.App.2000), *trans. denied.* Thus, our analysis must examine each of these three factors to determine if Miles & Finch owed Wynkoop a duty of care in obtaining an insurance policy from Zurich on behalf of Adesa.

### A. Relationship

■ Wynkoop claims that he was a third party beneficiary to the contract between Adesa and Miles & Finch. Third

party status may be used as a basis of duty in a negligence suit. *St. Paul Fire & Marine Ins. Co. v. Pearson Const. Co.*, 547 N.E.2d 853, 857 (Ind.Ct.App.1989), *trans. denied.* In order to be a third party beneficiary, Wynkoop must show that (1) the intent to benefit him is clear; (2) the contract imposes a duty on one of the contracting parties in favor of Wynkoop; and (3) the performance of the terms necessarily renders to the third party a direct benefit intended by the parties to the contract. *Emmons v. Brown*, 600 N.E.2d 133, 134 (Ind.Ct.App.1992). We find that Wynkoop was not a third party beneficiary to the contract between Adesa and Miles & Finch.

Part of the evidence Wynkoop designated in his response to the summary judgment motion was the deposition of Steven Kotz, a vice president of human resources at Adesa. Kotz stated that Adesa's intention in obtaining insurance from Zurich was to protect itself from liability due to negligence of its employees and not to provide employee benefits. Part of Kotz's deposition included the following:

Q. ... the policy would ultimately result, in liability coverage for the automobile that was being used in the course of business?

A. Well, the coverage was for ADESA

Q. And what do you understand liability insurance to protect against, this liability policy that you're now looking at?

A. The company's liability for negligence.

Q. Negligence of whom?

A. The company.

Q. Well, the company is made up of what? Employees?

A. Yeah.

Q. So you would expect it to cover the negligence of your employees when they commit a negligent act in the course of business?

A. Right.

Q. The policy would provide liability insurance coverage to third parties who might make claims for injuries arising out of an employee's negligent operation of a covered vehicle?

A. Yes.

Q. And that's the kind of coverage that you thought you were buying through Bob Funk?

A. Yes.

Record at 251.

Q. Who do you think insureds are?

A. The corporation.

Q. And who is the corporation, and how does it act? Who's the corporation?

A. Adesa.

Record at 258.

Kotz further testified:

Q. Exhibit 1 [3] is not an employee benefits policy, is it?

**A. No.**

Q. Did you intend to provide employee benefits through the purchase of Exhibit 1?

**A. No.**

Record at 260 (emphasis added). This deposition evidence indicates a lack of intent by Adesa to acquire an insurance policy that covers the liability of its employees. Adesa's intent in purchasing insurance was to protect its own liability, and presumably to avoid future lawsuits due to its negligence or its employees' negligence. There was no intent to provide each employee with personal automobile liability protection. Neither Adesa nor Miles & Finch intended to benefit Wynkoop or any other employee; the sole

---

**3.** Exhibit 1 is the insurance policy that Adesa obtained from Zurich.

purpose of the contract was for Miles & Finch to obtain an insurance policy to protect Adesa. Thus, Wynkoop was not a third party beneficiary to the Policy.

### B.  Foreseeability

■■ Next, we consider the foreseeability element. The focus in analyzing foreseeability is whether the victim and the type of harm suffered were reasonably foreseeable. *Webb*, 575 N.E.2d at 997.

■■ Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Franklin v. Benock*, 722 N.E.2d 874, 879 (Ind.Ct.App. 2000), *trans. denied.* Thus, part of the inquiry into the existence of a duty is concerned with exactly the same factors as is the inquiry into proximate cause. *Webb*, 575 N.E.2d at 997. Both seek to find what consequences of the challenged conduct should have been foreseen by the actor who engaged in it. *Id.* We examine what forces and human conduct should have appeared likely to come on the scene, and we weigh the dangers likely to flow from the challenged conduct in light of these forces and conduct. *Id.*

While it may be foreseeable that an employee of Adesa would be in an accident while running an errand for work, it is our conclusion that it would not be foreseeable that the employee would not have insurance on his or her personal vehicle. In this case, the accident itself is not the basis for Wynkoop's suit against Miles & Finch. Rather, the lawsuit derives from the fact that Wynkoop did not have automobile insurance because he thought Adesa would cover him. He did not have insurance on his dune buggy or his other personal vehicle, his truck. It is not foreseeable that Wynkoop or any other employee would depend on Adesa for personal automobile coverage. If Wynkoop had his own insurance policy on his vehicle, then that policy would cover his underinsured claim and he would not have brought suit against Miles & Finch.

### C.  Public Policy

Finally, we also believe that public policy precludes us from finding that Miles & Finch owed a duty to Wynkoop. We do not want to encourage employees to expect their employers to cover their personally owned automobiles in the company's insurance policies. Employees are often involved in accidents while at work, but they are also involved in accidents outside of their employment. The result would be that people would have no coverage at all if an accident occurred outside of the scope of their employment. This is not a practice that we want to encourage. Miles & Finch had a duty to Adesa to procure an insurance policy. Adesa's intent was to protect itself from its own negligence or its employees' negligence. Adesa Corporation is a separate entity from its employees and, therefore, it need only seek insurance coverage for itself, and not for its employees.

Wynkoop also argues that Miles & Finch assumed a duty to Wynkoop when it contracted with Adesa to procure an insurance policy from Zurich. Wynkoop points to Robert Funk's deposition, the Miles & Finch employee who negotiated the policy with Zurich, to show that the policy was to cover Adesa's employees. Thus, Wynkoop contends that if Miles & Finch sold a policy to Adesa that did not include coverage for Adesa's employees, Miles & Finch breached its duty. However, as we have already shown, Adesa's intent in purchasing the policy was to protect itself from liability, not its employees. Therefore, Miles & Finch did not assume any duty on behalf of Wynkoop.

Thus, we determine that there are no issues of material fact as to whether Miles

& Finch owed Wynkoop a duty of care. The evidence as a whole does not reflect an intent for Miles & Finch to assume a duty of care to Wynkoop as an employee of Adesa. Because we find that Miles & Finch does not owe Wynkoop a duty of care, we do not need to address whether Miles & Finch breached the duty or whether the breach proximately caused Wynkoop's injury. Therefore, we reverse the trial court's denial of summary judgment and remand with instructions to grant summary judgment in favor of Miles & Finch.

Reversed and remanded.

BAKER, J., and KIRSCH, J., concur.