**FOR PUBLICATION**

FILED

May 08 2014, 10:01 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**KAREN YVONNA RENFRO**
New Albany, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**KRISTIN GARN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE PATERNITY OF D.M.: | ) |
| | ) |
| J.W., | ) |
| | ) |
| Appellant-Respondent, | ) |
| | ) |
| vs. | )    No.  10A01-1306-JP-253 |
| | ) |
| C.M., | ) |
| | ) |
| Appellee-Petitioner. | ) |

APPEAL FROM THE CLARK CIRCUIT COURT
The Honorable Jerome F. Jacobi, Judge
The Honorable William A. Dawkins, Magistrate
Cause No. 10C02-1301-JP-23

**May 8, 2014**

**OPINION - FOR PUBLICATION**

**ROBB, Judge**

The State of Indiana filed a Verified Petition for the Establishment of Paternity alleging J.W. was the father of C.M.'s stillborn child. J.W. filed a motion to dismiss alleging the State's petition failed to state a claim upon which relief could be granted. Following a hearing, the trial court denied J.W.'s motion and ordered the parties to submit to genetic testing. J.W. appeals the trial court's order, raising the following issue for our review: whether the trial court abused its discretion in denying his motion to dismiss and ordering him to undergo genetic testing to establish paternity of a stillborn child when there were no custody or support issues to be determined. Concluding the State had no authority to bring this action and the trial court erred in allowing it to proceed, we reverse.

## Facts and Procedural History

On July 25, 2012, C.M., a minor, gave birth at home to a stillborn child, D.M. C.M. was unaware prior to this date that she was pregnant. C.M. alleged J.W., also a minor, was D.M.'s father. J.W. denies this allegation.

C.M. and her mother asked the Clark County Prosecutor's Office for assistance in establishing paternity. C.M. "assigned her support rights to the State of Indiana pursuant to an Assignment for Persons Not Receiving Public Assistance and Title IV-D of the Social Security Act." Appellant's Appendix at 4. The State then filed a Verified Petition for the Establishment of Paternity as next friend of D.M. and assignee of C.M.'s support rights naming J.W. as the alleged father. J.W. filed a motion to dismiss, contending that because of the circumstances of D.M.'s birth, there were no prenatal, birth, or postnatal expenses to be

2

reimbursed, nor was C.M. receiving services or assistance from the State which could be reimbursed. Therefore, J.W. alleged there was no cause of action for paternity by the State.

The trial court held a joint hearing on the petition to establish paternity and the motion to dismiss. In support of the petition to establish paternity, C.M. testified that she was unaware she was pregnant until she gave birth, that D.M. was stillborn, and that J.W. was the only person with whom she had sexual relations. C.M.'s mother testified that they wanted paternity established "[f]irst of all, for closure [and] for the respect of my, our family, as well as theirs, to know the truth of what happened." Transcript at 7-8. C.M.'s mother also testified that there had been no costs due to the pregnancy. She did note they are now paying for C.M.'s blood pressure medication, but she offered no evidence aside from her testimony that the blood pressure condition was a result of or related to the pregnancy. She also noted they had paid the costs of cremating D.M. The State acknowledged at the outset of the hearing that no money is owed to the State, but later stated that it may seek reimbursement of Medicaid costs in the future.[1] The parties then offered argument on J.W.'s motion to dismiss. After taking the matter under advisement, the trial court issued the following order:

> This matter comes before the Court on the Petitioner mother's request to establish paternity. The court having heard testimony and argument from the parties, now orders as follows:
>     1.    This is a unique situation. [C.M.] is a minor . . . who is now fourteen (14) years of age. The Respondent, [J.W.], is also a minor . . . who is now fifteen (15) years of age;
>     2.    [C.M.] delivered a stillborn child on July 25, 2012;
>     3.    [C.M.] alleges that she was unaware of her pregnancy until the child was delivered;

---

[1] In its brief, the State asserts that it "was and is not seeking Medicaid reimbursement in this case . . . ." Brief of the State of Indiana at 5 n.3.

4. [C.M.] has enlisted the services of the IV-D division to obtain assistance with the establishment of paternity. There are no state-owed moneys. She is not represented by counsel, and appeared for hearing with her parents;

5. [J.W.] also appeared with his parents, and is represented by counsel;

6. [J.W.] argues that the establishment of paternity serves no legitimate purpose as there are no state-owed expenses, there is no child support to be ordered, and that parenting time is not an issue. Further, he alleges that the petition is filed to harass him and his family. Likewise, [J.W.] urges the dismissal of this action;

7. [C.M.] argues that the child deserves to have a father legally recognized, and that this is not about the recoupment of any monies;

8. [J.W.] signed no affidavit of paternity. He further is not desirous of admitting paternity. Rather, he requests this court to order DNA testing should it deny his motion to dismiss;

9. There is a dearth of guidance by our appellate courts. The only applicable law appears to be IC § 31-14-5-8, which states, simply, that the establishment of paternity is not barred by a stillborn child;

10. Certainly, trial courts are not tasked with establishing public policy. However, while this court understands the argument that the establishment of paternity here is not to determine custody, parenting time or support, it would appear that the instant order of DNA testing seems more in line with the legislature's intent in enacting the paternity statute. Specifically, IC § 31-14-1-1 states that "[t]he general assembly favors the public policy of establishing paternity . . . of a child born out of wedlock."

11. [J.W.'s] motion to dismiss this action is denied. Further, should he insist on DNA testing, as is his right, his motion for testing is granted. He shall bear the cost of such testing. He is further tasked with contacting the IV-D office to arrange for payment and to make himself available for fluid collection.

Appellant's App. at 15-16. J.W. filed a motion to correct error which was denied. This appeal ensued.

4

Discussion and Decision

I.  Standard of Review

We generally review de novo a ruling on a motion to dismiss a civil complaint for failure to state a claim pursuant to Indiana Trial Rule 12(B)(6).  Putnam Cnty. Sheriff v. Price, 954 N.E.2d 451, 453 (Ind. 2011).  However, Rule 12(B) provides:

> If, on a motion, asserting the defense number (6), to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.  In such case, all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Although the proceedings in this case were not formally addressed as summary judgment, the trial court held a joint hearing on the paternity petition and J.W.'s motion and heard testimony, on which it clearly relied in denying J.W.'s motion.  The parties also relied on the testimony in arguing the motion and on appeal.  We therefore will review this case as a denial of summary judgment.

"The purpose of summary judgment is to terminate litigation for which there can be no factual dispute and which can be determined as a matter of law."  Matter of Paternity of J.J.H., 638 N.E.2d 815, 817 (Ind. Ct. App. 1994), trans. denied; see Ind. Trial Rule 56(C) (summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.").  The appealing party has the burden of persuading the reviewing court that the grant or denial of summary judgment was erroneous.  Knoebel v. Clark Cnty. Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009).  Where, as here, there are no disputed facts and the issue presented is a pure

5

question of law, we review the matter de novo.  Bennett v. CrownLife Ins. Co., 776 N.E.2d 1264, 1268 (Ind. Ct. App. 2002).  As the trial court noted, "[t]here is a dearth of guidance" on the particular point raised by this case.

## II.  Viability of a Paternity Action by the State

### A.  Title IV-D

The petition for paternity in this case was filed by the Clark County Prosecutor's Office on behalf of the Title IV-D office as assignee of support rights.  Generally speaking, Title IV-D of the Social Security Act outlines the procedures a state must establish to receive federal funding under the Aid to Families with Dependent Children ("AFDC") program.  In re Paternity of A.M.P., 896 N.E.2d 1188, 1191 (Ind. Ct. App. 2008).  These procedures include providing services "relating to the establishment of paternity or the establishment, modification, or enforcement of child support obligations" for a child receiving AFDC assistance or "any other child, if an individual applies for such services with respect to the child . . . ."  42 U.S.C. § 654.  Indiana's implementation of these procedures is found at Indiana Code chapter 31-25-3, which establishes a child support bureau charged with the state's administration of its Title IV-D plan, and Indiana Code chapter 31-25-4, which describes the duties of the bureau.

Indiana Code section 31-25-4-17 describes the specific support-related services to be provided by the bureau to Indiana's Title IV-D Child Support Program ("Indiana's Child Support Program") participants:  collecting support payments, assisting in obtaining a support order where none exists, and assisting "mothers of children born out of wedlock in

6

establishing paternity and obtaining a support order," among others. These same services must also be made available to people who do not receive public assistance if they apply and pay a fee.[2] Ind. Code § 31-25-4-19. The bureau is given statutory authority to contract with prosecuting attorneys or private attorneys to undertake those services. Ind. Code § 31-25-4-13.1(b); Moore v. Liggins, 685 N.E.2d 57, 61-62 (Ind. Ct. App. 1997) (holding, under prior version of statute, that non-recipient is entitled to seek assistance from the Title IV-D program and the State has authority to pursue that relief). Thus, in general, C.M., though not receiving Title IV-D assistance, is entitled to request the State's assistance in pursuing a paternity action and the State is authorized to do so.

However, the express purpose of Title IV-D, and by extension, the Indiana Child Support Program, is to enforce support obligations owed to custodial parents and their children by providing services—such as locating noncustodial parents, establishing paternity, and obtaining child and spousal support—for all children for whom such assistance is requested. 42 U.S.C. § 651 ("For the purpose of enforcing the support obligations owed . . . and assuring that assistance in obtaining support will be available under this part to all children (whether or not eligible for [AFDC] assistance . . .) for whom such assistance is requested, there is hereby authorized to be appropriated for each fiscal year a sum sufficient to carry out the purposes of this part." (emphasis added)); see also Indiana Department of Child Services, www.in.gov/dcs/2429.htm (explaining that Indiana's Child Support Program "is required to do a number of functions to assist in getting child support dollars to families"

---

[2] The fee may be waived under certain circumstances such as this in which C.M. was receiving

and that a county prosecutor's Title IV-D office "represents only the best interest of the child(ren).") (last visited April 23, 2014). There is no question that child support is not an issue in this action, and therefore no services to assist in obtaining or enforcing support rights are required. Title IV-D services cannot be uncoupled from their purpose. Cf. Collier v. Collier, 702 N.E.2d 351, 354-55 (Ind. 1998) (holding that even though "modification of an existing support order" is not one of the services enumerated in what is now Indiana Code section 31-25-4-17, necessary modification of a support order services the purpose of Title IV-D laws and the State therefore has authority to assist in pursuing modification). Because J.W. would owe no support to D.M. even if his paternity was established, the State has no authority under Indiana's Child Support Program to bring this paternity action.

### B. Indiana's Paternity Statutes

Although the State has no authority under Indiana's Child Support Program to bring an action to establish paternity of D.M., we also address its authority under Indiana's paternity statutes. A man's paternity may be established only in an action brought under Indiana Code article 31-14 or by his execution of a paternity affidavit. Ind. Code § 31-14-2-1. The legislature has specifically stated that it "favors the public policy of establishing paternity under this article of a child born out of wedlock." Ind. Code § 31-14-1-1. Of particular import to this case, the legislature has also declared that "[a]n action not otherwise barred is not barred by . . . (1) the death or stillbirth of the child . . . ." Ind. Code § 31-14-5-8.

Medicaid benefits through the Hoosier Healthwise program.

8

The purpose of the paternity article is to "provide proper legal procedures to enable . . . children [born out of wedlock] to have the proper care, maintenance, education, protection, support and opportunities, the same as children born in wedlock, and to establish the necessary legal procedure to enforce such rights and privileges for such children." Sullivan v. O'Sullivan, 130 Ind. App. 142, 146, 162 N.E.2d 315, 317 (1959). Indiana Code section 31-14-4-2(a) provides that upon the request of the mother (among others), the prosecuting attorney "shall file a paternity action and represent the child in that action." (Emphasis added.) Consistent with the purpose of the article and the language of the statute and in recognition that the parties to a paternity action may have different interests, we have held that the prosecutor's only interest in bringing a paternity action is to represent the child's interests. Clark v. Kenley, 646 N.E.2d 76, 78-79 (Ind. Ct. App. 1995), trans. denied. "The child's interests in a paternity determination include inheritance rights, social security survivor benefits, employee death benefits, and in some instances, proceeds of life insurance policies. A child's interests may also include the establishment of familial bonds, indoctrination into cultural heritage, and knowledge of family medical history." Id. at 79 (citation omitted). A stillborn child, however, has none of these interests. Consequently, the State has no interest to represent in an action seeking to establish paternity of that child, and therefore, the State has no authority under our statutes to bring this action to establish paternity of D.M.

This outcome does not render Indiana Code section 31-14-5-8 a nullity. Paternity can still be established for a stillborn child, just not in an action brought by the State. Indiana

9

Code section 31-14-4-1 provides a list of persons or entities that may file a paternity action, including the mother of the child, who may do so within two years of the child's birth. See Ind. Code § 31-14-5-3(b). Once a man is established as a child's biological father, the issues of support, custody and parenting time for the child are to be determined. See Ind. Code § 31-14-10-1. In the case of a stillborn child, support, custody, and parenting time are not at issue. However, when paternity is established, the court "shall order the father to pay at least fifty percent (50%) of the reasonable and necessary expenses of the mother's pregnancy and childbirth," including the cost of prenatal care, the child's delivery, the mother's hospitalization, and postnatal care. Ind. Code § 31-14-17-1. Therefore, in an appropriate case, paternity of a stillborn child may be established for the purpose of recouping those costs.[3]

## Conclusion

As a matter of law, the State had no authority to pursue an action to establish paternity of D.M. and the trial court therefore erred in allowing the paternity action to proceed by ordering genetic testing. The judgment of the trial court is therefore reversed.

Reversed.

BARNES, J., and BROWN, J., concur.

---

[3] Although we understand and sympathize with C.M. and her family and their wish to legally establish paternity for purposes of closure, respect, and learning the truth, see tr. at 7-8, these are not issues that the paternity statutes are intended to remedy.