**Steven BEAM, Appellant,**
**(Plaintiff Below),**

v.

**WAUSAU INSURANCE CO., Appellee**
**(Defendant Below).**

No. 20S03–0202–CV–111.

Supreme Court of Indiana.

Feb. 12, 2002.

Edmond W. Foley, South Bend, IN, for Appellant.

Edward L. Murphy, Jr., Diana C. Bauer, Fort Wayne, IN, for Appellee.

## ON PETITION TO TRANSFER

BOEHM, Justice.

This case addresses the proper setoff against a personal injury award for payments the claimant receives under worker's compensation. We hold that under the underinsured motorist policy involved here, the setoff is against the amount of damages, not against the policy limits, but where the amount recovered is reduced for the claimant's comparative fault, the reduction is by that percentage of duplicated elements of damage, not the gross sum of worker's compensation benefits to which the worker is entitled irrespective of fault.

### Facts and Procedural Background

On August 20, 1993, Steven Beam was driving a semi tractor trailer on Interstate 90 outside Chicago. Beam was severely injured when he swerved the semi off the road to avoid colliding with Amanda Vongsomchith's stalled car in the right driving lane.

As a result of the accident, Beam received payments from various sources. Vongsomchith's liability insurer, Safeway Insurance Company, paid its policy limits of $20,000 to Beam. After deducting this $20,000, Beam's personal automobile insurer, United Farm Bureau Insurance Company, paid Beam $80,000 under his underinsured motorist ("UIM") coverage, which had a limit of $100,000. Beam was driving a vehicle owned by his employer, Fairmont Homes, Inc., in the course of his employment. Fairmont was self-insured for worker's compensation benefits up to $350,000. Fairmont paid Beam the entire

amount of his medical expenses of $310,206.56 as a worker's compensation benefit. Finally, Fairmont's excess worker's compensation carrier, Wausau Insurance Company, made disability payments for temporary total disability, temporary partial disability, and permanent partial disability to Beam in the amount of $86,945.14.

In addition to the sources listed above, Fairmont had an automobile liability policy from Wausau that covered Fairmont and the occupants of its vehicles as the "insured," and provided UIM coverage of $1,000,000. Wausau denied UIM coverage to Beam, and Beam brought this suit against Wausau.

Wausau's policy contains the following provisions relevant to its UIM exposure to Beam:

A. COVERAGE

1. We will pay the sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle."

. . .

C. EXCLUSIONS

This insurance does not apply to: . . .

2. The direct or indirect benefit of any insurer or self-insurer under any workers compensation, disability benefits or similar law.

. . .

D. LIMIT OF INSURANCE . . .

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under the Coverage Form's LIABILITY COVERAGE.

3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any workers' compensation, disability benefits or similar law.

Before trial, the parties agreed that the jury would determine only liability and damages, and the propriety of any setoffs for amounts Beam received from other sources would be determined by the court. It was also stipulated that the jury verdict should be reduced by the $20,000 from Vongsomchith's liability insurer and the $80,000 from Beam's UIM policy. The jury allocated fault 55% to Vongsomchith and 45% to Beam, and awarded Beam $701,371 as net damages. The record does not explicitly indicate how the jury arrived at this figure or what it concluded the total damages to be. The trial court awarded setoffs against the jury verdict of $701,371 for (1) the amount Beam received from Vongsomchith's insurer ($20,000), (2) Beam's UIM coverage ($80,000), (3) the worker's compensation medical benefits from Fairmont ($310,206.56), and (4) the worker's compensation disability payment from Wausau ($86,945.14). The recovery was thus reduced to $204,219.30.

Beam appealed, claiming the trial court erred when it subtracted these amounts from his jury award of $701,371. The Court of Appeals rejected Beam's arguments and affirmed the trial court decision. *Beam v. Wausau Ins. Co.*, 743 N.E.2d 1188 (Ind.Ct.App.2001).

In this appeal, Beam contends: (1) the Court of Appeals erred by not following a 1994 Court of Appeals case which held similar policy language to be ambiguous and therefore to be construed in favor of the insured; (2) the amount of worker's compensation subtracted from the jury award was incorrect because the jury award was reduced by Beam's 45% fault allocation; (3) the Court of Appeals erred in reviewing a point of law under a clearly

erroneous standard rather than de novo; and (4) the Court of Appeals wrongly applied the invited error doctrine in addressing the appropriate method of calculating setoffs of the payments received from other insurance carriers.

## I. Standard of Review

 Beam argues that the Court of Appeals erred in reviewing the setoffs under the "clearly erroneous" standard set forth in Trial Rule 52(A). Beam contends that Rule 52(A) pertains to cases tried without a jury, and because this case was tried to a jury, Rule 52(A) has no applicability to this case. We disagree. Although the issues of liability and damages were tried to a jury, the issue involving reductions of the jury verdict was tried by the court without a jury. In coming to its decision, the trial court in this case made special findings of fact and conclusions of law. As to the findings of fact, the Court of Appeals properly applied a clearly erroneous standard. Conclusions of law, however, are reviewed de novo. Finally,

> A "clearly erroneous" judgment can result from application of the wrong legal standard to properly-found facts, and in that situation we do not defer to the trial court. We are not bound by the trial court's characterization of its results as "findings of fact" or "conclusions of law." Rather, we look past these labels to the substance of the judgment and will review a legal conclusion as such even if the judgment wrongly classifies it as a finding of fact.

*State v. Van Cleave,* 674 N.E.2d 1293, 1296 (Ind.1996).

## II. Wausau's Policy Language is Not Ambiguous

We address Beam's first argument to resolve the conflicting Court of Appeals' decisions reaching opposite conclusions as to whether the policy language in this case is ambiguous.

 Although some "special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insured's, if a contract is clear and unambiguous, the language therein must be given its plain meaning." *Allstate Ins. Co. v. Boles,* 481 N.E.2d 1096, 1101 (Ind.1985). On the other hand, " '[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 244 (Ind. 2000) (quoting *Am. States Ins. Co. v. Kiger,* 662 N.E.2d 945, 947 (Ind.1996)). A contract will be found to be ambiguous only if reasonable persons would differ as to the meaning of its terms. *Ind.-Ky. Elec. Corp. v. Green,* 476 N.E.2d 141, 145 (Ind.Ct.App.1985). In insurance policies, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party." *Auto. Underwriters, Inc. v. Hitch,* 169 Ind.App. 453, 457, 349 N.E.2d 271, 275 (1976).

The limitation under paragraph D.2 in Wausau's UIM coverage expressly reduces its limits by amounts from other sources. Paragraph 3 reduces "any amount payable for damages" by "sums paid or payable under any workers' compensation." Beam contends that the phrase "[a]ny amount payable for damages under this coverage" has two interpretations and can either be read to refer to a reduction from the total damages or from the policy limits. Based on this claimed ambiguity, Beam argues that this provision reduces Wausau's policy limit of $1,000,000, not Beam's damage award amount of $701,371, by the amount of his worker's compensation benefits.

In 1992, this Court found similar policy language to be ambiguous and, as a result, construed it in favor of the insured. *Tate v. Secura Ins.*, 587 N.E.2d 665 (Ind.1992).[1] In *Tate*, the total award was greater than the available insurance and the court construed the policy most favorably to the insured. As a result, the "amount payable" to be reduced was held to be the amount of the damages, not the policy limits. *Id.* at 667–68. That same year, this Court held similar, but distinguishable, policy language to be unambiguous and interpreted the language to refer to policy limits rather than total damages the insured incurred. *Am. Econ. Ins. Co. v. Motorists Mut. Ins. Co.*, 605 N.E.2d 162 (Ind.1992).[2] Since these holdings, two lines of Court of Appeals' cases involving reduction policy language have evolved, although in many cases the policy language varies and in some instances the courts have found the peculiar language or other language of the policy relevant to the case. One line holds similar language ambiguous and, as a result, construes the policy language in favor of the insured.[3] The other line of cases holds the language unambiguous, but the cases differ on whether the language provides for reductions from the total damages or the policy limit.[4]

1. The language in *Tate* provided in pertinent part that "[a]mounts payable will be reduced by ... [a]mounts paid" to the insured or on behalf of the tortfeasor. *Tate*, 587 N.E.2d at 668. This Court held that because "amounts payable" was a phrase not clearly defined in the policy, Secura was "bound by the plain and ordinary meaning of its words as viewed from the standpoint of the insured," and did not serve to reduce the limits. *Id.*

2. The language in *American* involved two insurance policies. *Am. Econ. Ins. Co.*, 605 N.E.2d at 164. American's policy limit was found under a section entitled "Our Limit of Liability" and provided for reduction of "[a]ny amount payable under this insurance." Motorists' insurance policy limit was similarly found under a section entitled "Limit of Liability" and provided for reduction of "[a]ny amounts otherwise payable for damages under this coverage." In holding the term "amounts payable" refers to the uninsured motorists coverage limits, this Court distinguished *Tate* because (1) the reduction language in the *American* policies was found under the "Limit of Liability" which indicated the "amounts payable" referred to the policy limits, and (2) the "Limit" section was found immediately following a policy section defining the uninsured limits. *Id.*

3. *See Sutton v. Littlepage*, 669 N.E.2d 1019, 1022 (Ind.Ct.App.1996) ("[S]ubject to the above limits of liability, damages payable will be reduced [by payments]" is ambiguous.); *Ansert v. Ind. Farmers Mut. Ins. Co.*, 659 N.E.2d 614, 620–21 (Ind.Ct.App.1995) ("Any amounts payable will be reduced by [other payments]" is ambiguous.); *Transcon. Technical Serv., Inc. v. Allen*, 642 N.E.2d 981, 983–84 (Ind.Ct.App.1994), *trans. denied* ("Any amount payable for damages under this coverage shall be reduced [by payments]" is ambiguous.); *Delaplane v. Francis*, 636 N.E.2d 169, 171–72 (Ind.Ct.App.1994), *trans. denied* ("Any amounts payable will be reduced [by payments]" is ambiguous.).

4. *Compare Medley v. Am. Econ. Ins. Co.*, 654 N.E.2d 313, 316 (Ind.Ct.App.1995), *trans. denied* ("The limit of liability will be reduced by all sums paid" was unambiguous and provided for a reduction from policy limits.) *and Hardiman v. Governmental Interinsurance Exch.*, 588 N.E.2d 1331, 1333–34 (Ind.Ct.App. 1992), *trans. denied* ("Any amount payable under this insurance shall be reduced by [other payments]" was unambiguous and provided a reduction from the policy limits.) *with Standard Mut. Ins. Co. v. Pleasants*, 627 N.E.2d 1327, 1329–30 (Ind.Ct.App.1994), *trans. denied* ("The company shall not be obligated to pay under this Coverage that part of the damages which the insured may be entitled to recover [from the owner of an uninsured vehicle]" was not ambiguous and provided for a reduction from the damages the insured is entitled to recover from the uninsured motorist.); *see also Wildman v. Nat'l Fire and Marine Ins. Co.*, 703 N.E.2d 683, 686–87 (Ind.Ct.App.1998), *trans. denied* ("Any amount payable under this coverage shall be reduced [by payments]" was unambiguous, but policy was ambiguous on other grounds thus never reaching a conclusion as to wheth-

Beam argues that the Court of Appeals erred when it declined to follow *Transcon. Technical Serv., Inc. v. Allen,* 642 N.E.2d 981 (Ind.Ct.App.1994), *trans. denied.* In *Transcontinental,* the plaintiff, Allen, was injured by an automobile in the course of his employment and incurred damages in excess of $500,000. *Id.* at 982. The party who injured Allen was insured by State Farm Insurance Company, which paid Allen its coverage limits of $50,000. Allen also received worker's compensation benefits of $206,525 from his employer. Finally, Allen's employer had liability coverage from Transportation Insurance Company that contained UIM limits of $500,000 and language almost identical to Wausau's.[5] *Id.* at 983.

Transportation argued that both the $206,525 in worker's compensation benefits and the $50,000 from the tortfeasor's insurer should be subtracted from the policy limit of $500,000. Allen argued that the reduction for worker's compensation paid should come from the total damages, which exceeded $500,000, rather than from the limit. The *Transcontinental* court ruled in favor of Allen and, like *Tate,* held the policy language was ambiguous because there were two reasonable conclusions that could be drawn from it. *Id.* at 984. The court concluded:

> The first conclusion, as argued by the Insurer, is that even though worded differently, both paragraphs mandate re-

duction from the $500,000 limit of liability. The second conclusion is that the "[a]ny amount payable for damages under this coverage" language refers back to the initial "Coverage" section, wherein the Insurer promises to pay "all sums the 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an ... underinsured motor vehicle."

*Id.* at 984.

The Court of Appeals in this case agreed with Judge Staton's dissent in *Transcontinental* that no ambiguity existed in the policy language and expressly declined to follow *Transcontinental. Beam,* 743 N.E.2d at 1193. Although we believe the *Transcontinental* court arrived at the proper result on the facts of that case, we do not agree with *Transcontinental's* conclusion that the policy language is ambiguous. Part D of the policy refers to "[a]ny amount payable for damages under this coverage." We think it is clear that the language provides that the reduction will be taken from the amount of damages Beam incurred rather than from the policy limit. The quoted phrase explicitly provides that the reduction will be taken from Beam's *damages,* not the policy limits. The following phrase, "under this coverage," is a general phrase contained in insurance agreements that refers to the scope of the initial insuring agreement, not

---

er the language was interpreted to mean a reduction from the policy limits or from the damage amount.).

5. The relevant policy language in *Transcontinental* was as follows:
 A. COVERAGE
 1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle."
 ...
 D. LIMIT OF INSURANCE ...

2. The Limit of Insurance under this coverage shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under this Coverage Form's LIABILITY COVERAGE.
 3. Any amount payable for damages under this coverage shall be reduced by all sums paid or payable under any worker's compensation, disability benefits or similar law.

*Id.* at 983 (citations to record omitted).

the dollar amount of the policy limit. Here, the coverage the policy refers to is "sums the 'insured' is legally entitled to recover as compensatory damages from the owner ... of an 'underinsured motor vehicle.'" Because Beam was 45% at fault, he is legally entitled to $701,371, and any reduction for worker's compensation and disability benefits should come from that amount, irrespective of whether that amount is above or below the policy limits. If that amount is above the limit, this helps the insured, and if it is below the limit, it helps the insurer. We think this is not only a neutral rule, but also consistent with the language of the policy and its purpose to provide indemnity for covered losses subject to policy limits.

In addition to referring to a reduction of "damages," it is noteworthy that when the policy attempts to reduce limits, as opposed to damages, it chooses language that does precisely that. The language of the limitation in paragraph 2 provides, "The *Limit of Insurance under this coverage* shall be reduced by all sums paid or payable by or for anyone who is legally responsible, including all sums paid under the Coverage Form's LIABILITY COVERAGE." (emphasis added). This limitation, by reducing the "limit of insurance," unmistakably provides that any reduction is to be taken from the policy limit. *Cf. Medley v. Am. Econ. Ins. Co.*, 654 N.E.2d 313, 316 (Ind.Ct.App.1995), *trans. denied* (holding the phrase "limit of liability will be reduced by all sums paid" was unambiguous and should be interpreted to provide for a reduction from policy limits).

We think that reducing the award by the amount of recovery from other sources effects the basic purpose of an insurance policy to cover the amount of a covered loss, no more and no less, subject only to that policy's limits. Reducing limits where the loss is within the limits has no practical effect and permits a double recovery if the same loss is also covered by other sources. On the other hand, reducing the limit if an award is in excess of the limits credits the insurer, not the claimant, with payments from sources other than the premium. For all these reasons, we hold that *Transcontinental* reached the correct result, although based on incorrect reasoning. The policy language was not ambiguous, but *Transcontinental* correctly reduced the worker's compensation benefits from the damage award rather than the policy limit.

## III. Amount of Setoff for Worker's Compensation Benefits

■ Beam contends that the trial court erred in subtracting the full amount of worker's compensation from the jury award, which was based on a 55% allocation of fault to the tortfeasor. He bases this contention on two separate statutes. He first contends that the lien reduction statute, Indiana Code section 34–51–2–19, is relevant and has the effect of reducing the jury verdict of $701,371 by $218,433.43 (55% of the worker's compensation payment) rather than $397,151.70 (the full amount of those benefits). Section 34–51–2–19 provides:

If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished:

(1) by comparative fault; or

(2) by reason of the uncollectibility of the full value of the claim for personal injuries or death resulting from limited liability insurance or from any other cause;

the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear pro rata

share of the claimant's attorney's fees and litigation expenses.

Ind.Code § 34–51–2–19 (1998). Although Beam concedes that there is no lien involved in this case, he argues that the lien statute needs to be considered in determining the appropriate reduction in coverage.

Specifically, Beam points out that if he had received the full amount of the jury's award from Ms. Vongsomchith or her insurer, he would have been required to reimburse Fairmont and Wausau a portion of the payments they made as worker's compensation benefits. In that case, the worker's compensation payors would not be entitled to a dollar for dollar reimbursement of their payments because the lien reduction statute would have reduced any lien by both Beam's 45% share of the comparative fault, and also by their pro rata share of Beam's attorney's fees and expenses in collecting the award. To reach that result, Beam argues, his net award of $701,371 should be reduced by only $218,433.43 (55% of the $397,151.70 paid as worker's compensation benefits).

 The Court of Appeals held that the lien reduction statute does not apply to this case. We agree. A lien is a "claim which one person holds on another's property as a security for an indebtedness or charge." *Hubble v. Berry*, 180 Ind. 513, 519, 103 N.E. 328, 330 (1913). Subrogation "applies whenever a party, not acting as a volunteer, pays the debt of another that, in good conscience, should have been paid by the one primarily liable." *Erie Ins. Co. v. George*, 681 N.E.2d 183, 186 (Ind.1997). By its terms, the lien reduction statute applies only to those situations where an insurer has already paid monies to an injured party and is subsequently attempting to recover the amount paid. *Sell v. United Farm Bureau Family Life Ins. Co.*, 647 N.E.2d 1129, 1133 (Ind.Ct.

App.1995), *trans. denied*. Here, there is no claim by an insurer against an insured. Rather, this claim is a claim being made by the insured, Beam, against the insurer, Wausau.

Similarly, there is no third party attempting to recover monies previously paid to Beam prior to the judgment and there is no worker's compensation lien in favor of Fairmont. Indeed, the trial court noted in its findings of fact and conclusions of law, "Fairmont is not a party to this cause of action and has failed to appear or otherwise file any documentation with the court concerning any liens against the judgment on behalf of Fairmont." The trial court also noted that counsel for Fairmont was provided notice of a hearing to be held on the credit issue, and counsel failed to appear.

 Beam's second contention is one that Beam asserts the Court of Appeals never addressed. He argues that offsetting the net damage award by the gross amount of worker's compensation payments is against public policy and improperly reduces Wausau's coverage below the liability limits required by Indiana's UM/UIM statute. Beam relies on *Leist v. Auto Owners Ins. Co.*, 160 Ind.App. 322, 329, 311 N.E.2d 828, 833 (Ind.Ct.App.1974) which held an automobile insurance policy requiring uninsured motorist coverage to be reduced by worker's compensation payments was in derogation of the uninsured motorist statute and was therefore void as against public policy. Beam acknowledges that *Hardiman v. Governmental Interinsurance Exch.*, 588 N.E.2d 1331, 1335 (Ind. Ct.App.1992), *trans. denied*, held that a setoff provision for worker's compensation benefits was not void as against public policy, but notes that the *Hardiman* court stated that the prohibition against reducing the statutory minimum remains. Indiana's statutory requirement provides

in pertinent part, "The ... underinsured motorist coverages must be provided by insurers ... in limits equal to the limits of liability specified in the bodily injury liability provisions of an insured's policy, unless such coverages have been rejected in writing by the insured." Ind.Code § 27–7–5–2 (1993).[6] Beam argues that if Wausau is permitted to reduce its UIM coverage by offsetting the net damage award by gross worker's compensation payments, the effect is to reduce coverage below the liability limits of $1,000,000, which is impermissible.

■ First, although Beam asserts Wausau's policy provided for "liability limits of $1,000,000," the record does not include Wausau's *bodily injury* liability limit. Assuming Wausau's bodily injury liability is $1,000,000, as Beam asserts, Beam's contention is not raised by the facts of this case. Beam states, "Wausau's policy here has liability limits of $1,000,000. If Wausau is permitted to reduce its UIM coverage by offsetting the net damage award by gross worker's compensation payments, the effect is to reduce coverage below the liability limits, and this is impermissible." It appears Beam is arguing that the reduction for worker's compensation diminishes Wausau's liability limit so that Wausau would never technically be liable for the full policy limit of $1,000,000, in violation of section 27–7–5–2. Insurance companies are permitted to offset coverage by monies the insured receives for worker's compensation. *Hardiman,* 588 N.E.2d at 1335. However, as explained below, this allows credit only for the amounts that duplicate the coverage of the policy. Thus, if the limits were impaired by this reduction below $602,848.30 ($1,000,000 minus the

$397,151.70 worker's compensation benefits), Beam might have a point.

Beam's total damages were $701,371, which is $298,629 below the $1,000,000 policy limit. Even if the worker's compensation Beam received was prorated before the offset or not subtracted from the award at all, his injuries would never exceed the $1,000,000 policy limit, and Wausau would not be required to pay the full $1,000,000 limit. In sum, the statute requires Wausau to provide a limit "at least equal to the limits of liability specified in the bodily injury liability provisions," but does not require Wausau to pay this amount in full when permissible setoffs exist.

■ Although neither the lien reduction statute nor *Leist* is directly applicable, we think the policy itself leads to the same result Beam seeks. The relevant exclusion calls for a reduction of the amount paid for "all sums paid or payable under any worker's compensation, disability benefits or similar law." Read literally and in isolation, this provision would reduce the damages by the amount of any worker's compensation benefit paid to any claimant at any time for any claim. That is of course preposterous and would render coverage wholly illusory. The provision can only mean that damages are reduced by the amount of any worker's compensation benefit for the same element of damage that the policy insures. Here, because of the comparative fault finding, only 55% of the worker's compensation benefits was for damages that were awarded by the jury. As a result, the amount subtracted for worker's compensation benefits should be 55% of the worker's compensation medical benefits (55% of $310,206.56 is

---

**6.** Currently found with amendments not relevant to this case at I.C. § 27–7–5–2 (Supp. 2001).

$170,613.60) plus 55% of the worker's compensation disability benefits (55% of $86,945.15 is $47,819.83). The total damages then become:

| | |
|---|---|
| $701,371.00 | Awarded by the jury |
| 20,000.00 [7] | Vongsomchith's liability policy |
| 80,000.00 | Beam's underinsured policy |
| 170,613.60 | Worker's compensation medical |
| − 47,819.83 | Worker's compensation disability |
| 382,937.57 | Net amount owed under UIM coverage |

This result is consistent with the principle that worker's compensation provides benefits without regard to fault and avoids reduction of those benefits based on the jury's assessment of Beam's share of the fault.

## IV. Post–Judgment Interest

■■■ Because we modify the amount of damages, but do not reverse the judgment for the plaintiff, post-judgment interest runs from the date of the original verdict on the modified amount. Indiana Code section 24–4.6–1–101 calls for post-judgment interest from the date of the "verdict" in a jury trial or the findings in a bench trial. *Kellogg v. City of Gary*, 562 N.E.2d 685, 717 (Ind.1990), *Grubnich v. Renner*, 746 N.E.2d 111, 115 (Ind.Ct.App. 2001), *trans. denied*, and *Wedge v. Lipps Indus., Inc.*, 575 N.E.2d 332, 337 (Ind.Ct. App.1991) announced the same rule, but each dealt with somewhat different circumstances.[8] If a judgment is reversed on appeal and remanded to the trial court for the entry of a new judgment, post-judgment interest accrues from the date the trial court enters the new judgment.[9]

This Court has not explicitly addressed the question of whether post-judgment interest on a modified award runs on the amount after modification by the reviewing court or on the original amount. *Cf. Irvine v. Irvine*, 685 N.E.2d 67, 71 (Ind.Ct. App.1997). Other states have considered this issue and have come to differing conclusions. Occasionally, courts have taken the view that post-judgment interest runs on the modified amount from the date of a modified judgment so that the defendant is not penalized for taking a lawful appeal. *Gonzalez v. City of New York*, 148 A.D.2d

---

**7.** During the hearing on Motions in Limine held by the trial court on October 12, 1999, Beam's counsel agreed that any verdict entered by the jury should be reduced by the amounts Beam received from Vongsomchith and from Beam's personal insurer. The Court of Appeals held, and we agree, that under the Doctrine of Invited Error, this stipulation precluded raising on appeal the issue whether these amounts should be deducted from the policy limits rather than set off against the jury's award.

**8.** In *Kellogg* and *Grubnich* the amount of judgment was not modified on appeal. In *Wedge*, the appellate court awarded post-judgment interest after reducing the damage amount, but the opinion does not indicate whether the interest was to be calculated on the modified amount or the original amount.

**9.** *See Stockton Theatres, Inc. v. Palermo*, 55 Cal.2d 439, 11 Cal.Rptr. 580, 360 P.2d 76, 78 (1961) (A judgment bears interest from the original date of the award, unless the judgment is reversed on appeal, then "the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment."); *Maynard v. Maynard*, 251 S.W.2d 454, 456–57 (Ky.1952) ("[A] judgment which has been reversed is 'as though it had never been'" and therefore, interest accrues from the date of the new judgment.); *Resner v. N. Pac. Ry.*, 164 Mont. 176, 520 P.2d 655, 655 (1974) ("[W]hen a judgment is reversed on appeal[,] the new award subsequently entered by the trial court can bear interest only from the date of entry of such new judgment."); *Mason v. W. Mortgage Loan Corp.*, 754 P.2d 984, 986 (Utah Ct.App. 1988) (Where original judgment was for defendant, but reversed on appeal, interest runs from date of new judgment.). *But see, O'Brien v. State Farm Mut. Auto. Ins. Co.*, 17 Wis.2d 551, 117 N.W.2d 654, 660 (1962) (Where the judgment of the trial court is reversed, the satisfaction of the judgment vacated, and the verdict of the jury as to damages for pain and suffering reinstated, interest runs from the date of the original judgment.).

668, 539 N.Y.S.2d 418, 422 (N.Y.App.Div. 1989), *overruled by Love v. New York,* 78 N.Y.2d 540, 577 N.Y.S.2d 359, 583 N.E.2d 1296, 1297 (1991). However, this view is unusual and is inconsistent with the Indiana statute and case law providing that post-judgment interest runs from the date of the verdict or finding of the court.

Others have determined that interest should be paid on the original amount from the time of the jury verdict until the date of modification on appeal and then on the modified award from the time of the modified judgment. *Owens v. Stokoe,* 170 Ill. App.3d 179, 120 Ill.Dec. 725, 524 N.E.2d 755, 757 (1988) (reasoning that the defendant did not have a reasonable opportunity to forestall the accrual of interest on the new amount and that it is unreasonable to expect the defendant to foresee the court's new judgment).

Despite these variations, the prevalent view in other jurisdictions is that "where a money judgment has been modified on appeal and the only action necessary in the trial court is compliance with the mandate of the appellate court, interest on the judgment as modified runs from the date of the original judgment." *Gilmore v. Morrison,* 341 So.2d 779, 780 (Fla.Dist.Ct.App.1976).[10] We think this is the more sensible view. If a judgment is increased, this rule compensates plaintiffs for the loss of money that has been determined to have rightfully belonged to them throughout the time of the pending appeal. It also reduces the defendant's incentive to continue to resist a plainly meritorious appeal merely to obtain the lower interest cost produced by

the initial award. Similarly, if a judgment is reduced on appeal, interest should run only on the amount to which the plaintiff is entitled, not on a greater sum. And despite some courts' concern that a party may be surprised by a modification, the fact of a pending appeal gives the parties adequate notice that they may be liable for interest on a modified amount if the appellant prevails. The modified amount is the amount that the trial court should have entered on the original date, and post-judgment interest should run on the modified amount from the date of the original verdict.

**Conclusion**

This case is remanded to the trial court with instructions to enter judgment for the plaintiff in the amount of $382,937.57 with interest consistent with this opinion.

SHEPARD, C.J., and DICKSON, SULLIVAN, and RUCKER, JJ., concur.

**10.** *See also Snapp v. State Farm Fire & Cas. Co.,* 60 Cal.2d 816, 36 Cal.Rptr. 612, 388 P.2d 884, 886 (1964) ("When a judgment is modified upon appeal, whether upward or downward, the new sum draws interest from the date of the entry of the original order, not from the date of the new judgment."); *Long v. Hendricks,* 117 Idaho 1051, 793 P.2d 1223, 1227 (1990) (appellate court awarded interest on the increased amount of medical expenses from the date of the original judgment); *Ulibarri v. Gee,* 107 N.M. 768, 764 P.2d 1326, 1327 (1988) ("[W]hen an award is remanded for a new decision by reason of excessiveness, the new award shall accrue interest from the date of the original judgment.").