## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 13 2017, 6:40 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

James R. Fisher
Miller & Fisher, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Danford R. Due
Charles J. Maiers
Due Doyle Fanning & Alderfer, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Karen Bedwell, as Personal Representative of the Estate of Jeffrey Bedwell, Deceased, | June 13, 2017 |
| *Appellant-Defendant,* | Court of Appeals Case No. 77A01-1612-CT-2899 |
| v. | Appeal from the Sullivan Superior Court |
| Auto-Owners Insurance Company, | The Honorable Hugh R. Hunt, Judge |
| *Appellee-Plaintiff* | Trial Court Cause No. 77D01-1603-CT-154 |

**Crone, Judge.**

# Case Summary

About a half hour after he left The Uptown Tavern, Inc., an extremely inebriated patron, Jeffrey Bedwell, sat on a nearby railroad track and was killed by a train. Karen Bedwell, as personal representative of Bedwell's estate ("the Estate"), filed a wrongful death action against Uptown and its shift manager/bartender, Leslie D. Chapman. Uptown's general liability insurer, Auto-Owners Insurance Company, filed an action for declaratory judgment, asserting that the Estate's claims in its underlying wrongful death action were excluded under the alcohol exclusion in Uptown's general liability insurance policy. Auto-Owners filed a motion for summary judgment, contending that all four of the Estate's claims were excluded from coverage as a matter of law, and the trial court granted Auto-Owners' motion.

The Estate now appeals, maintaining that Auto-Owners waived and/or was estopped from asserting a coverage defense concerning the Estate's claim against Uptown for failure to aid an imperiled person and that the trial court erred in granting summary judgment. Finding that Auto-Owners was not precluded by waiver or estoppel from asserting its coverage defense and that the trial court did not err in granting Auto-Owners' motion for summary judgment, we affirm.

# Facts and Procedural History

On August 5, 2012, Bedwell arrived at Uptown between 12:30 and 1:00 a.m. While there, he drank several beers and shots of alcohol, some of which were

provided courtesy of other Uptown patrons. Bedwell stayed for about two and a half hours. His former girlfriend, Chapman, was tending bar that night. Around 3:00 a.m., Chapman went out the back exit to empty some trash in a dumpster, and Bedwell followed her, grabbed her arm, and held her against the building. He attempted to persuade her to rekindle their romantic relationship, and she told him that she was not interested and was married to someone else. Shortly thereafter, an off-duty employee, Kentz Ward, approached and began to interact with Bedwell, at which point Chapman pulled her arm away from Bedwell, and Bedwell either sat down or fell onto the two stairs outside the back door. Chapman ran inside the building and continued to tend bar. Bedwell reentered the building with Ward, stayed for a few minutes, and left again through the back door. At 3:30 a.m., Uptown closed. Chapman went outside to empty the trash and heard someone urinating behind the dumpster. She could not see who it was, but Bedwell indicated that he was the one urinating and urged her to leave with him. Chapman said no, told him to go home, and reentered the building. She did not see him again.

[4]    Just before 4:00 a.m., Bedwell sat down on a railroad track adjacent to Uptown's property. A train approached, and the conductor noticed that Bedwell appeared to be sitting up but was unconscious and unresponsive to the impending danger. He repeatedly blew the train's whistle and applied the brakes but was unable to stop. The train struck and killed Bedwell. An autopsy revealed that Bedwell's blood alcohol concentration was .239 percent at the time of his death.

In November 2013, the Estate filed a wrongful death action against Uptown and Chapman, raising three claims under the Dram Shop Act[1] and one tort claim under the Restatement (Second) of Torts § 314A (1965) ("Section 314A") for allegedly breaching a "duty not to abandon Mr. Bedwell, as an invitee of the tavern, in a helpless, perilous state, to which [Uptown and Chapman] contributed." Appellee's App. Vol. 2 at 8. The Estate filed a claim with Uptown's liquor liability insurance carrier, United States Liability Insurance Group ("USLIG"). USLIG paid its policy limits to the Estate and provided legal representation for the wrongful death action. The Estate also filed a claim with Auto-Owners, as Uptown's general liability insurer. In February 2015, Auto-Owners sent Uptown a coverage position letter in which it expressly found the Estate's alcohol-related claims to be excluded under the policy and stated that it would provide defense and indemnification for any nonalcohol-related claims "to the extent otherwise covered under this policy." Appellant's App. Vol. 2 at 112. The letter expressly stated that Auto-Owners "completely reserved" all rights, terms, conditions, and exclusions under the policy. *Id.*

In March 2016, Auto-Owners filed an action against the Estate for declaratory judgment that it had no duty to pay any judgment awarded to the Estate in its wrongful death action against Uptown and Chapman. Several months later, Auto-Owners filed a motion for summary judgment, asserting that all four of

---

[1] The Dram Shop Act allegations include breach of duty (1) not to serve Bedwell while he was intoxicated; (2) not to serve Bedwell after last call at 3:00 a.m.; and (3) to remove all alcohol from Bedwell at 3:30 a.m. Appellee's App. Vol. 2 at 8.

the Estate's underlying claims in its wrongful death action were excluded from coverage as a matter of law under the alcohol provision in Uptown's policy. The trial court granted Auto-Owners' motion, and the Estate filed a motion to correct error, which the trial court denied.

The Estate now appeals, challenging the trial court's grant of summary judgment. Additional facts will be provided as necessary.

# Discussion and Decision

## Section 1 – Auto-Owners was not precluded by waiver or estoppel from asserting its coverage defenses.

The Estate contends that alleged assurances made in Auto-Owners' coverage position letter precluded it, by waiver or estoppel, from asserting its coverage defenses a year later in its action for declaratory judgment. Where an insurer assumes the defense of an action on behalf of an insured without a reservation of rights and with knowledge of facts that would have permitted it to deny coverage, it may be estopped from raising a defense of noncoverage. *Transcon. Ins. Co. v. J.L. Manta, Inc.*, 714 N.E.2d 1277, 1281 (Ind. Ct. App. 1999). In other words,

> an *insured* suffers prejudice as a matter of law where an insurer, *without reserving its rights* and giving the insured the opportunity to determine whether to accept the tender of defense, assumes a *complete defense* of the underlying suit against the insured and *controls the litigation for an extended period of time* after becoming aware of a coverage defense.

*Id*. at 1282 (emphases added).

[9]     The Estate cites Auto-Owners' coverage position letter as evidence that it agreed to cover Uptown on the Estate's Section 314A claim for failure to aid. In contrast, Auto-Owners asserts that it expressly reserved its rights concerning coverage, that its provision of defense did not amount to an admission of a duty to indemnify, and that the determination of whether the Section 314A claim was alcohol-related (and thus excluded) could not be made without conducting discovery. The coverage position letter reads in pertinent part as follows:

> This policy does not provide any coverage for liquor liability. As such, [Auto-Owners] will not provide coverage for defense or indemnification in connection with claims or damages arising out of the allegations for liquor liability in the Wrongful Death Complaint for Jeffrey Bedwell.
>
> We will provide coverage for defense and indemnification in connection the [sic] bodily injury and wrongful death allegations not arising out of liquor liability, to the extent otherwise covered under this policy.
>
> ….
>
> *All rights, terms, conditions, and exclusions in your policy are in full force and effect and are completely reserved. No action by any employee, agent, attorney or other person on behalf of [Auto-Owners]; or hired by [Auto-Owners] on your behalf; shall waive or be construed as having waived any right, term, condition, exclusion or any other provision of the policy.*

Appellant's App. Vol. 2 at 111-12 (italics in original, underlining omitted).

As the italicized language indicates, Auto-Owners completely reserved its rights under the policy. Even the statement that it would defend and indemnify for nonalcohol-related allegations specified a limitation of "to the extent otherwise covered under this policy." *Id.* The question of whether the Estate's Section 314A claim was subject to the alcohol exclusion simply could not be answered without more information, to be collected during discovery. *See Ind. Farmers Mut. Ins. Co. v. N. Vernon Drop Forge*, 917 N.E.2d 1258, 1276 (Ind. Ct. App. 2009) (where insurer defended its insured in underlying lawsuit but its duty to indemnify could not be assessed until much later, when litigation concluded), *trans. denied* (2010). Thus, as of the date of its coverage position letter, Auto-Owners did not have knowledge of facts that would have permitted it to deny or admit coverage at that time. Moreover, we note that a significant portion of the Estate's wrongful death action was not in the "control" of Auto-Owners for an extended period but was also being managed by Uptown's liquor liability insurance carrier, USLIG. Finally and importantly, *Manta* applied estoppel where the insurer's conduct resulted in prejudice to its *insured*, which was Uptown and not the Estate. As such, *Manta* does not apply. Consequently, Auto-Owners was not precluded by waiver or estoppel from asserting its coverage defenses.

## Section 2 – The trial court did not err in granting summary judgment in favor of Auto-Owners.

The Estate also maintains that the trial court erred in granting summary judgment in favor of Auto-Owners. We review a summary judgment de novo,

applying the same standard as the trial court and drawing all reasonable inferences in favor of the nonmoving party. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). In conducting our review, we consider only those matters that were designated at the summary judgment stage. *Haegert v. McMullan*, 953 N.E.2d 1223, 1229 (Ind. Ct. App. 2011). Summary judgment is appropriate if the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Hughley*, 15 N.E.3d at 1003; Ind. Trial Rule 56(C).

[12] The moving party bears the initial burden of demonstrating the "absence of any genuine issue of fact as to a determinative issue." *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). Then the burden shifts to the nonmoving party to "come forward with contrary evidence" showing a genuine issue for the trier of fact. *Id*. at 762. The nonmoving party cannot rest upon the allegations or denials in the pleadings. *Syfu v. Quinn*, 826 N.E.2d 699, 703 (Ind. Ct. App. 2005). In *Hughley*, our supreme court emphasized that the moving party bears an onerous burden of affirmatively negating the opponent's claim. 15 N.E.3d at 1003. This approach is based on the policy of preserving a party's day in court, thus erring on the side of allowing marginal cases to proceed to trial on the merits rather than risking the short-circuiting of meritorious claims. *Id*. at 1003-04.

[13] In determining whether issues of material fact exist, we neither reweigh evidence nor judge witness credibility. *Peterson v. Ponda*, 893 N.E.2d 1100, 1104 (Ind. Ct. App. 2008), *trans. denied* (2009). Rather, we must accept as true those facts established by the designated evidence favoring the nonmoving party. *Brill*

*v. Regent Commc'ns, Inc.*, 12 N.E.3d 299, 309 (Ind. Ct. App. 2014), *trans. denied.* A trial court's grant of summary judgment arrives on appeal clothed with a presumption of validity. *Williams*, 914 N.E.2d at 762. We may affirm a grant of summary judgment on any legal basis supported by the designated evidence. *Harness v. Schmitt*, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010).

[14] "The construction of an insurance policy is a question of law for which summary judgment is particularly appropriate." *Property-Owners Ins. Co. v. Ted's Tavern, Inc.*, 853 N.E.2d 973, 977 (Ind. Ct. App. 2006). "[I]f an insurance contract is clear and unambiguous, the language therein must be given its plain and ordinary meaning." *Id.* at 978 (quoting *Beam v. Wausau Ins. Co.*, 765 N.E.2d 524, 527 (Ind. 2002)). This includes unambiguous terms that limit the insurer's liability. *Id.* "[I]nsurers have the right to limit their coverage of risks and, therefore, their liability by imposing exceptions, conditions, and exclusions. However, to be enforced, these limitations must be clearly expressed and … consistent with public policy." *Id.* (citation omitted). An insurance contract is not deemed ambiguous merely because the parties have asserted contrary interpretations of its language or a controversy exists. *Id.* Rather, it "will be deemed ambiguous only if reasonable people would honestly differ as to the meaning of its terms." *Id.* (citation omitted).

[15] Our function in this appeal is not to resolve the ultimate question of whether Uptown is liable to the Estate under Section 314A but rather to determine whether this claim was properly excluded from coverage as a matter of law under Uptown's general liability policy with Auto-Owners. The trial court

granted summary judgment for Auto-Owners (not Uptown) in its action for declaratory judgment concerning coverage under the policy for any of the Estate's claims against Uptown. The only claim relevant to this appeal is the Estate's Section 314A claim for failure to aid. That said, we discuss Section 314A only as it relates to the issue of Auto-Owners' obligations under the general liability policy.

[16]     The alcohol exclusion in Uptown's general liability policy with Auto-Owners reads, in pertinent part,

> 2. Exclusions
>
> This insurance does not apply to:
>
> c. Liquor Liability
>
> "Bodily injury" or "Property damage" for which any insured may be held liable by reason of:
>
> (1) Causing or contributing to the intoxication of any person.
>
> (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

Appellee's App. Vol. 2 at 4.

[17] In its wrongful death complaint against Uptown and Chapman, the Estate raised its failure to aid allegation as follows: "The Defendants breached the duty not to abandon Mr. Bedwell, as an invitee of the tavern, in a helpless, perilous state, to which the Defendants contributed." Appellee's App. Vol. 2 at 8. The trial court determined as a matter of law that Bedwell's perilous state was related to his intoxication, and therefore his claim was subject to the alcohol exclusion.

[18] A landowner owes to its invitee "a duty to exercise reasonable care for his protection while he is on the landowner's premises." *Pfenning v. Lineman*, 947 N.E.2d 392, 406 (Ind. 2011) (quoting *Burrell v. Meads*, 569 N.E.2d 637, 639 (Ind. 1991)). Section 314A reads, in pertinent part,

> (1) A common carrier is under a duty to its passengers to take reasonable action
>
> (a) to protect them against unreasonable risk of physical harm, and
>
> (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.
>
> ….
>
> (3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

[19] The Estate argues that its Section 314A claim is not subject to the alcohol exclusion because alcohol consumption is not an element of the tort. However, protection from peril/unreasonable risk is an element of the tort, and that peril may stem from any number of acts or omissions by the landowner, including, but certainly not limited to, furnishing alcoholic beverages to the invitee while he is on the premises. Auto-Owners asserts that Bedwell's intoxication (three times the legal limit) was inextricably related to his (in)ability to evaluate the risk of his being struck by a train and that, as such, the alcohol exclusion precludes coverage under the general liability policy. In contrast, the Estate submits that Bedwell's peril was independent of his alcohol consumption, particularly, that (1) Chapman saw him sitting on the railroad track and should have acted to protect him from danger; and (2) he was placed in peril due to an alleged altercation with Chapman on the steps outside Uptown's back door. The designated materials are devoid of any evidence to support these assertions. First, Chapman testified in her deposition that she never saw Bedwell sitting on the railroad tracks; instead, the only place/time that she saw him sitting or standing outside was on the two steps by the back door the first time that she went out to empty the trash. Appellee's App. Vol. 2 at 19. After she heard him urinating and told him to go home, she never saw him again. *Id.*

[20] As for any alleged altercation, the undisputed evidence shows that the first time Chapman went outside, Bedwell held on to her arm and begged her to leave with him. When Ward approached them on the back steps, Bedwell turned to greet him and Chapman pulled her arm away, after which Bedwell either sat

down or fell onto the stair. *Id.* at 19-20. Bedwell was clearly able to get up, reenter the tavern, and visit awhile before leaving again. To say that this incident amounted to such peril as to require Uptown to protect Bedwell from a train that would come one hour later simply defies reason. *See* Section 314A cmt. f (defendant "is not required to take any action beyond that which is reasonable under the circumstances").

[21] Because the source of Bedwell's peril was his extreme intoxication, the Estate's claim for failure to aid an imperiled person was subject to the alcohol exclusion in Upland's general liability policy with Auto-Owners. As such, the trial court did not err in granting Auto-Owners' motion for summary judgment. Accordingly, we affirm.

[22] Affirmed.

Baker, J., and Barnes, J., concur.