In the

 United States Court of Appeals
 For the Seventh Circuit
 ____________________
No. 22-1933
FRANKENMUTH MUTUAL INSURANCE COMPANY,
 Plaintiff-Appellee,
 v.

FUN F/X II, INC. and CAO ENTERPRISES II, LLC,
 Defendants-Appellants.
 ____________________

 Appeal from the United States District Court for the
 Northern District of Indiana, South Bend Division.
 No. 3:20-cv-00076-DRL — Damon R. Leichty, Judge.
 ____________________

 ARGUED DECEMBER 1, 2022 — DECIDED FEBRUARY 28, 2023
 ____________________

 Before EASTERBROOK, HAMILTON, and KIRSCH, Circuit
Judges.
 HAMILTON, Circuit Judge. Appellants Fun F/X II, Inc. and
Cao Enterprises II, LLC (collectively “Fun F/X”) sought insur-
ance coverage after a warehouse fire. The relevant insurance
policy issued by appellee Frankenmuth Mutual Insurance
Company provides that it does not cover losses if prior to the
fire the policy holder knew of a suspension or impairment in
an automatic sprinkler system yet failed to notify
2 No. 22-1933

Frankenmuth of the issue. Based on this policy exclusion, the
district court granted summary judgment for Frankenmuth.
We aﬃrm.
I. Undisputed Facts and Procedural History
 Fun F/X II, Inc. is a costume and theatrical supply retailer
that stored its inventory in a warehouse in South Bend,
Indiana owned by Cao Enterprises II, LLC. Victor Cao is the
sole member of Cao Enterprises II, LLC and the sole
stockholder of Fun F/X II, Inc. Cao purchased the warehouse
in 1999. It then had a functional sprinkler system with a
working supply of water. Cao replaced the sprinkler heads
around 2004 and hired inspection companies for routine
system testing. In 2016, an inspector from Legacy Fire
Protection found no problems.
 But when the same inspector returned on September 28,
2017, the sprinkler system had no water pressure. The inspec-
tor notified Cao, and the two called South Bend Water Works
immediately. The person they reached could not explain why
no water was flowing and had no record of the water being
shut oﬀ. Nothing more was done to address the lack of water
flow for almost two months.
 On November 15, 2017, Cao spoke with the city fire inspec-
tor to try to solve the problem. Cao said he had asked his in-
spection company to investigate how to turn the water back
on and that he needed to follow up to see if it had found a
solution. The city fire inspector answered Cao’s questions but
did not know how to restore the water. The conversation
ended with Cao saying he would contact the city again.
 Cao then called the South Bend Water Works oﬃce and
had a five- to ten-minute conversation with the operator who
No. 22-1933 3

answered the phone. The operator told him there was no
record of the water being disconnected at the warehouse’s
address. Cao asked the operator to restore the water and
“assumed that she was going to take it to the higher level and
figure out what was going on.” Cao never heard from any
water works personnel and did nothing else to check whether
the water was in fact restored. No one ever told Cao the source
of the problem, let alone that the problem was fixed.
 The next year, a diﬀerent employee from Legacy Fire Pro-
tection performed the annual inspection in the warehouse.
Cao was not present for that September 2018 inspection and
was not notified of any problems.1
 A fire destroyed the warehouse and all of its contents on
July 26, 2019. Fun F/X claimed losses exceeding $7 million.
The sprinkler system still did not have any water flowing to
it. After the fire, the source of the problem was discovered:
The city apparently had cut and capped the pipe supplying
the sprinkler system in April 2017 when the building next
door was demolished. Cao was told that the worker cutting
the pipe incorrectly believed the Fun F/X warehouse was be-
ing demolished as well.2

 1 An invoice suggests that the 2018 inspection covered only the fire

extinguishers and not the sprinkler system. But even if the inspection was
supposed to include the sprinkler system, the inspection’s scope would
not change the analysis or outcome of this dispute between insurer and
insureds.
 2 Counsel for Fun F/X said at oral argument that plaintiffs have a sep-

arate lawsuit pending against the City of South Bend related to the ware-
house fire. This opinion is narrowly focused on whether Cao failed to re-
port a known system impairment to his insurer as required for insurance
4 No. 22-1933

 Cao filed a claim under an insurance policy issued by
Frankenmuth Mutual Insurance Company with both Fun F/X
II, Inc. and Cao Enterprises II, LLC as named insureds. The
policy contained an exclusion providing that Frankenmuth
“will not pay for loss or damage caused by or resulting from
fire if, prior to the fire, you: 1. Knew of any suspension or im-
pairment in any protective safeguard listed in the Schedule
above and failed to notify us of that fact.” The referenced
schedule listed automatic sprinkler systems—defined to in-
clude “Any automatic fire protective or extinguishing sys-
tem”—as protective safeguards. It is undisputed that Cao
never notified the insurer after he learned in September 2017
that the sprinkler system lacked a working water supply. It is
also undisputed that no one ever told Cao before the fire that
the water flow had been restored.
 Invoking diversity jurisdiction under 28 U.S.C. §1332,
Frankenmuth filed this action in the Northern District of
Indiana seeking a declaratory judgment that it did not owe
insurance coverage to Fun F/X for losses from the fire. Fun F/X
asserted a counterclaim for breach of the insurance policy.
Both Fun F/X and Frankenmuth filed summary judgment
motions. The district court granted summary judgment in
favor of Frankenmuth based on the policy’s notice-of-
impairment exclusion. Frankenmuth Mut. Ins. Co. v. Fun F/X II,
Inc., 601 F. Supp. 3d 330, 343–44 (N.D. Ind. 2022). The court
found the undisputed facts showed an “impairment” in the
sprinkler system—the system had no water flowing to it—

coverage. Nothing we say here is intended to express any finding as to the
city’s potential liability.
No. 22-1933 5

and that Fun F/X, through Cao, knew of this impairment yet
failed to notify Frankenmuth. This appeal followed.
II. Analysis
 When a district court interprets an insurance policy to de-
cide a motion for summary judgment, we review the decision
de novo. E.g., Atlantic Casualty Ins. Co. v. Garcia, 878 F.3d 566,
569 (7th Cir. 2017). A grant of summary judgment is appro-
priate if “there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law.”
Fed. R. Civ. P. 56(a). The parties agree that Indiana law ap-
plies.
 Under Indiana law, insurance policies are generally con-
strued using familiar contract analysis rules and the interpre-
tation is often a question of law. E.g., Home Federal Savings
Bank v. Ticor Title Ins. Co., 695 F.3d 725, 729 (7th Cir. 2012); see
also, e.g., Ebert v. Illinois Casualty Co., 188 N.E.3d 858, 863–64
(Ind. 2022). “Policy terms are interpreted from the perspective
of an ordinary policyholder of average intelligence.” Allgood
v. Meridian Security Ins. Co., 836 N.E.2d 243, 246–47 (Ind. 2005),
quoting Burkett v. American Family Ins. Grp., 737 N.E.2d 447,
452 (Ind. App. 2000). Where the policy language is unambig-
uous, plain meaning controls. Ebert, 188 N.E.3d at 864. Our
“power to interpret contracts does not extend to changing
their terms and we will not give insurance policies an unrea-
sonable construction to provide additional coverage.” Briles v.
Wausau Ins. Cos., 858 N.E.2d 208, 213 (Ind. App. 2006). “By
contrast, courts may construe—or ascribe meaning to—am-
biguous policy terms only.” Erie Indem. Co. v. Estate of Harris,
99 N.E.3d 625, 630 (Ind. 2018). A provision is ambiguous if
“reasonably intelligent policyholders would honestly disa-
gree on the policy language’s meaning.” Id. Disagreement
6 No. 22-1933

among the parties about the meaning of a term does not ren-
der that term ambiguous. Circle Block Partners, LLC v. Fire-
man’s Fund Ins. Co., 44 F.4th 1014, 1018 (7th Cir. 2022), citing
G&G Oil Co. of Ind. v. Cont’l Western Ins. Co., 165 N.E.3d 82, 87
(Ind. 2021).
 A. The Policy Exclusion
 The outcome of this case hinges on whether the notice-of-
impairment exclusion applies. Indiana law instructs that the
burden is on the insurer to demonstrate that a claim is barred
by an exclusion. Telamon Corp. v. Charter Oak Fire Ins. Co., 850
F.3d 866, 869 (7th Cir. 2017). Indiana law also requires that
policies express coverage limitations clearly. State Auto. Mut.
Ins. Co. v. Flexdar, Inc., 964 N.E.2d 845, 848 (Ind. 2012). If an
exclusion provision is genuinely ambiguous, it must be con-
strued strictly against the insurer. Id.
 Here, the notice exclusion bars coverage if the insured
“Knew of any suspension or impairment in any protective
safeguard … and failed to notify [Frankenmuth] of that fact.”
This provision is clear and easy to apply to the facts at hand.
Cao admits that he knew there was no water flowing to the
sprinkler system on at least two occasions: the September
2017 inspection and his November 2017 communications with
the city fire inspector. He admits that no one ever told him
that water flow had been restored. Cao also admits that he
never told Frankenmuth about this lack of water flow. Under
these facts and the policy’s plain language, we agree with the
district court that the exclusion bars coverage. We next ad-
dress Fun F/X’s arguments to the contrary.
No. 22-1933 7

 B. Suspension or Impairment “In” the Sprinkler System
 The exclusion requires notice upon learning of a
“suspension or impairment in” the sprinkler system. Fun F/X
characterizes the lack of water flow as “the 2017 impairment,”
acknowledging that the word impairment does describe the
situation. Yet Fun F/X asserts that the “impairment which
occurred in our case arguably did not occur within the Fun
F/X sprinkler system” because the pipe was cut and capped in
a location that Fun F/X claims was outside its own sprinkler
system.
 The district court rejected this argument, describing it as
“hyperfocus[ing] on a perceived diﬀerence between ‘in’ and
‘to’ not borne out by [these words’] plain meaning or the
policy’s intent.” Frankenmuth Mut. Ins. Co., 601 F.Supp.3d at
343. We agree with the district court and see no merit in (or
to) Fun F/X’s argument. A reasonable policyholder of average
intelligence would not read the exclusion to draw a
distinction between two scenarios, one where not a drop of
water flows to the system due to a break in a pipe an inch from
the first sprinkler head, and another where not a drop of
water flows to the system due to a break just outside the
warehouse’s property line. Such a forced distinction would
hinder rather than promote the notice exclusion’s obvious
purpose. The notice exclusion exists because Frankenmuth is
concerned with whether the sprinkler system will actually
protect the insured property in a fire. This fundamental
concern with the eﬀectiveness of fire protection systems is not
aﬀected by the precise location of any malfunction.
 A reasonable policyholder confronted with a sprinkler
system incapable of releasing any water would respond “yes”
if asked whether there is a “suspension or impairment in” that
8 No. 22-1933

system. The answer would not hinge on the precise location
of the source of the problem because a reasonable person con-
sidering whether there is a “suspension in” a system looks to
whether the system can perform its function. Here, the sprin-
kler system’s function was to deliver water in the event of fire.
When Cao learned that there was no water in the system, he
learned that there was a “suspension or impairment in” the
system and needed to report the problem to Frankenmuth if
he wanted to keep the fire insurance in eﬀect.
 This case illustrates exactly why Frankenmuth requires
such notice: It wants the opportunity to verify that problems
are fixed. Cao may have been satisfied with his “no news is
good news” approach of assuming (a) that an unidentified
water works oﬃcial whom he spoke with once by phone
would fix the unknown problem without contacting him
again, and (b) that silence from a new inspector indicated re-
stored water flow. But if Frankenmuth had been given the op-
portunity to get involved, it might have required that some-
one actively confirm water was flowing.
 Fun F/X does not point out an ambiguity in the insurance
policy because no reasonable reader would adopt Fun F/X’s
interpretation narrowing the exclusion’s application to com-
ponents within the sprinkler system based on the policy’s use
of the word “in.” See Beam v. Wausau Ins. Co., 765 N.E.2d 524,
528 (Ind. 2002) (showing of ambiguity requires that “reasona-
ble persons” could disagree over interpretation, as “ambigu-
ity is not aﬃrmatively established simply because contro-
versy exists and one party asserts an interpretation contrary
to that asserted by the opposing party”) (citations omitted).
There is no genuine factual dispute on the decisive question:
Whether Fun F/X knew of a suspension or impairment in the
No. 22-1933 9

sprinkler system prior to the fire and failed to report that
problem to Frankenmuth.
 C. Timing of Cao’s Knowledge of the Lack of Water Flow
 Next, Fun F/X argues that notice was not required because
Cao did not know of the impairment or suspension at the time
of the July 2019 fire. Fun F/X contends that Cao reasonably
believed there was water flowing to the system by that time
because he had asked the city water works department to fix
the problem in November 2017 and was not notified of any
problems after a 2018 inspection.
 This argument is a non-starter. The notice-of-impairment
exclusion bars coverage if “prior to the fire” the insured knew
of a “suspension or impairment in” the sprinkler system and
did not notify Frankenmuth. Under the policy’s language, the
insured’s knowledge of the status of the problem at the time
of the fire is not controlling. Cao admits that he knew of the
lack of water flow on at least two occasions in 2017. On each
occasion, he was obliged to notify Frankenmuth that his
sprinkler system had no working water source.
 The argument flags a more diﬃcult issue that we might
face under diﬀerent facts. Suppose Cao had been given some
appropriate basis for believing the problem was fixed but
never notified Frankenmuth of the problem or the fix. The
policy exclusion does not say that a failure to notify is cured
when the underlying problem is solved. In fact, the policy
says nothing about whether failure to notify can ever be
cured. Counsel for Frankenmuth took the strong position at
oral argument that under the policy’s terms, a failure to notify
promptly could exclude coverage for the rest of time. We
wonder whether a lack of compliance with a notice exclusion
10 No. 22-1933

can bar coverage indefinitely, even after the underlying prob-
lem has been fixed. But on the facts here, the lack of notice
plainly bars coverage. The problem that Cao failed to report
in 2017 was the same problem that rendered the sprinklers
useless during the fire in 2019.
 D. Exception to the Exclusion
 Finally, Fun F/X argues that the policy’s exception to the
notice-of-impairment exclusion applies. The district court
found that Fun F/X waived this argument. Frankenmuth Mut.
Ins. Co., 601 F. Supp. 3d at 342 n.4. Regardless of waiver, the
exception does not help Fun F/X avoid the notice requirement.
 The exception provides: “If part of an Automatic Sprinkler
System … is shut oﬀ due to breakage, leakage, freezing con-
ditions or opening of sprinkler heads, notification to us will
not be necessary if you can restore full protection within 48
hours.” Fun F/X argues that this exception applies because the
Rules and Regulations governing the Municipal Utilities for
the City of South Bend require reconnection of water service
“at least within one (1) working day after it is requested to do
so.” South Bend Board of Public Works, City of South Bend
Municipal Utilities Rules and Regulations § VIII(D) (2017).
Cao called the city the day that he learned of the lack of water
flow. He claims that the problem should have been resolved
quickly enough that he should not have needed to provide
notice to Frankenmuth.
 This argument ignores the timing of Cao’s knowledge. The
initial September 2017 phone call to the city did not yield a
promise to restore the water. In fact, the person Cao spoke
with had no record of the water being turned oﬀ. Nothing
about that call indicated that the unknown problem could be
No. 22-1933 11

fixed in one day. No one from the city followed up with Cao
or notified him that the water had been restored. No further
action was taken to try to restore the water for nearly two
months.
 In November 2017, Cao called the city fire inspector. In
Cao’s own words, he made that November call because “I
didn’t know why the water was oﬀ or how to get it back on.”
This statement is not consistent with a belief that the problem
should have been solved by the prior phone call or that the
problem could be solved in the next 48 hours. When Cao
called South Bend Water Works in November, he was once
again told the city had no record of the water being turned oﬀ
and did not know why it was not flowing. The request to re-
store water flow was obviously not a simple one to fulfill, and
no one ever gave Cao the impression that the problem could
be solved within a certain time. Given the timeline and con-
tent of communications about restoring the water, Cao cannot
rely on the 48-hour exception to the notice-of-impairment re-
quirement.
 Conclusion
 Because the notice-of-impairment exclusion bars cover-
age, we do not address other issues raised, including whether
the cut and capped pipe was part of the sprinkler system that
Fun F/X was required by the policy to maintain. It is unfortu-
nate that Cao’s calls to city oﬃcials did not lead to further in-
vestigation or resolution of the water supply problem. It is
also unfortunate that the 2018 inspection did not once again
bring the problem to Cao’s attention. But these unfortunate
facts do not change that Cao had knowledge in September
and November of 2017 that the system had no water flowing
12 No. 22-1933

to it yet never reported that impairment to Frankenmuth nor
was told reliably that the problem had been fixed.
 The judgment of the district court is AFFIRMED.